

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Joan H. Lefkow | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 02 C 2751 | DATE | 8/6/2003 |
| CASE TITLE | Black vs. Safer Foundation, et al. | | |

MOTION: [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

DOCKET ENTRY:

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
  ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry]  Enter Memorandum Opinion and Order. Defendants' motion for summary judgment [18-1] is granted. Plaintiff's motion for judicial estoppel [28-1] is denied. Case is terminated.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | 2 number of notices | Document Number |
|---|---|---|---|---|
| | No notices required. | | | |
| X | Notices mailed by judge's staff. | | AUG - 7 2003 date docketed | |
| | Notified counsel by telephone. | | | 37 |
| | Docketing to mail notices. | U.S. DISTRICT COURT CLERK | SL docketing deputy initials | |
| X | Mail AO 450 form. Mailed by MD. | | | |
| | Copy to judge/magistrate judge. | 03 AUG -6 PM 4:22 | 8/6/2003 date mailed notice | |
| MD | courtroom deputy's initials | FILED FOR DOCKETING Date/time received in central Clerk's Office 4:03 | MD mailing deputy initials | |

RICHARD BLACK, )
)
Plaintiff, )
)
vs. ) No. 02 C 2751
) Judge Joan H. Lefkow
SAFER FOUNDATION and HENRIETTA )
MASON, )
)
Defendants. )
)

## MEMORANDUM OPINION AND ORDER

Plaintiff, Richard Black ("Black"), has filed a four-count complaint, and a one-count amendment to his complaint, against defendants, Safer Foundation ("Safer") and Henrietta Mason ("Mason"). In Count I, Black alleges that Safer violated the Age Discrimination in Employment Act, 29 U.S.C. §§ 621 *et seq.* ("ADEA"), because it denied him employment for three positions due to his age, 57. In Count II, Black alleges that Safer committed sex discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000(e) *et seq.* ("Title VII"), because it hired a female while denying him employment. In Counts III and IV Black alleges retaliation because Safer allegedly denied him employment services after he complained about Safer's failure to hire him due to his age and sex. In Counts V and VI, Black alleges disparate impact claims under Title VII and 42 U.S.C. § 1981 because Safer's practice of not hiring ex-criminal offenders within one year of their release from incarceration allegedly discriminates against African Americans, who, according to Black, make up 64% of the Illinois prison system. Count V also contains a § 1981 claim against Mason.

Pending before the court is Safer and Mason's motion for summary judgment. For the reasons stated below, the motion is granted.

## SUMMARY JUDGMENT STANDARDS

Summary judgment obviates the need for a trial where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). To determine whether any genuine fact exists, the court must pierce the pleadings and assess the proof as presented in depositions, answers to interrogatories, admissions, and affidavits that are part of the record. Fed R. Civ. P. 56(c) Advisory Committee's notes. The party seeking summary judgment bears the initial burden of proving there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In response, the non-moving party cannot rest on bare pleadings alone but must use the evidentiary tools listed above to designate specific material facts showing that there is a genuine issue for trial. *Id.* at 324; *Insolia v. Philip Morris Inc.*, 216 F.3d 596, 598 (7th Cir. 2000). Although a bare contention that an issue of fact exists is insufficient to create a factual dispute, *Bellaver v. Quanex Corp.*, 200 F.3d 485, 492 (7th Cir. 2000), the court must construe all facts in a light most favorable to the non-moving party as well as view all reasonable inferences in that party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The court applies the summary judgment standards with added rigor in employment discrimination cases where intent and credibility are crucial issues. *Courtney v. Biosound*, 42 F.3d 414, 419 (7th Cir. 1994).

2

# FACTS[1]

Safer is a non-profit organization which secures employment for ex-criminal offenders and serves as a residence for offenders who qualify for work release. (Def. L.R. 56.1 ¶ 1.) Safer hires ex-offenders and they comprise twelve percent of its staff. (Def. L.R. 56.1 ¶ 2.)

Black is a 57 year old black male. (Def. L.R. 56.1 ¶ 3.) He was convicted of armed robbery, murder and bank robbery and incarcerated from December 29, 1965 through March 21, 2001. (Def. L.R. 56.1 ¶¶ 4-5.)

Black attained several types of credentials throughout his years of incarceration. The Illinois Department of Corrections and Mac Murray College certified Black as a law clerk in 1990. (Def. Ex. B ¶¶ 2-5.) Black received a Bachelor of Science degree from Illinois State University in general studies with a concentration in criminal science and political science in 1993. (*Id.* ¶¶ 21-24.) He worked as a law clerk at Pontiac State Prison from 1991-1995 and at Dixon State Prison from 1996-1999. (*Id.* ¶¶ 1-6.) Additionally, he attended a business management program at Lewis University in 1998. (*Id.* ¶¶ 7-8.)

Black was directed to Safer for employment training in July 2001. (Def. L.R. 56.1 ¶ 6.) While receiving employment skills training, Black claims that he spoke to Safer's receptionist about applying for employment with Safer. (Def. L.R. 56.1 ¶ 7.)

---

[1] Black did not respond to the defendants' Local Rule 56.1 Statement of Material Facts. Normally, if a party fails to respond to a Local Rule 56.1 Statement, all such facts supported by the record are deemed admitted. Black, however, is proceeding *pro se*, and the defendants did not abide by the requirement under Local Rule 56.2 regarding notice to *pro se* litigants opposing summary judgment. This rule requires the moving party to give *pro se* litigants specific notice about the requirements in responding to a motion for summary judgment. Since no Local Rule 56.2 notice was given to Black, the court will not deem the defendants' Local Rule 56.1 Statement to be admitted and will conduct an independent review of the entire record to determine which facts are disputed. *See United States v. Reed*, 01 C 6535, 2003 WL 548381, at *1 n.1 (N.D. Ill. Feb. 25, 2003); *Schafer v. Querry & Harrow, Ltd.*, No. 01 C 3908, 2002 WL 360651, at *2 n.1 (N.D. Ill. March 7, 2002).

Black alleges that, on or about July 14, 2001, he applied for employment for the positions of (1) Case Manager, (2) Intensive Case Manager, and (3) Correctional Counselor. (Def. L.R. 56.1 ¶ 9.) Safer filled the Case Manager position on November 5, 2001 and the Intensive Case Manager position on December 17, 2001; Safer withdrew the Correctional Counselor position. (Def. L.R. 56.1 ¶ 11.)

The Case Manager position required one year of work experience in individual counseling, a Bachelor's Degree in social work, criminal justice or psychology or equivalent work experience and CADC certification (Certified Addition Drug Counselor). (Def. L.R. 56.1 ¶ 12.) Safer filled the position with LeRoy Abdullah, a 61 year old black male. (Def. L.R. 56.1 ¶ 13.) Abdullah had attended Roosevelt University for four years, majored in psychology, was CADC certified and had 19 years of prior work experience. (Def. L.R. 56.1 ¶ 14.) Safer states that Abdullah was the most qualified candidate at that time. (Def. L.R. 56.1 ¶ 14.)

The Intensive Case Manager position required two years of work experience in Human Services working with high risk youths (ages 16-21) and a Bachelor's Degree in a related discipline or equivalent work experience. (Def. L.R. 56.1 ¶ 15.) Safer filled this position with Yusufu Lonell Mosley, a 49 year old black male. (Def. L.R. 56.1 ¶ 16.) Mosley attended Roosevelt University for 3½ years, majored in sociology and political science, and had 5 years of prior work experience. Safer states that Mosley was the most qualified candidate at that time. (Def. L.R. 56.1 ¶ 17.) The Correctional Counselor position required 3 years of security work experience and one year of supervisory experience. (Def. L.R. 56.1 ¶ 18.)

Black alleges that on October 11, 2001, Yevette Peeples, an employee of Safer, advised him that he would not be hired by Safer because he lacked employment experience and because

4

he had not been released from incarceration for more than one year. (Def. L.R. 56.1 ¶ 19.) Safer maintains a practice of not hiring ex-offenders within one year of the date of their release from incarceration. (Def. L.R. 56.1 ¶¶ 20-21.) Safer states that this policy is in response to the need for ex-offenders to re-adjust to society before they can effectively reintegrate other ex-offenders into society. (*Id.*)

Black further alleges that Peeples advised him that Safer had previously hired a female without work experience because she had been an intern with the State's Attorney's Office for six months. (Def. L.R. 56.1 ¶ 22.) Black is unable to identify the woman. (Def. L.R. 56.1 ¶ 23.) Safer did, in fact, hire Sara Ryczek, a 27 year old female, to a Case Worker position on June 1, 2000. (Def. L.R. 56.1 ¶ 24.) Ryczek has a Bachelor's Degree in Health and Human Services and Psychology from Buffalo State College and was enrolled in the Criminal Justice Masters Degree Program at Chicago State University. (Def. L.R. 56.1 ¶ 25.) Ryczek served as an intern with the United States Probation and Pretrial Services in Buffalo, New York for four months, before working three years as a Senior Counselor at Community Mission-Aurora House in Lockport, New York and two years as a Case Manager with Southside Day Reporting Center in Chicago, Illinois. (Def. L.R. 56.1 ¶ 26.)

Finally, Black alleges that after he complained to Peeples about not being hired for lack of prior work experience, Safer deprived him of certain employment services and required an escort while he was at Safer. (Def. L.R. 56.1 ¶ 27.) Notwithstanding, Safer admitted at his deposition that he was not denied employment services when he was escorted in the building. (Def. L.R. 56.1 ¶ 28.) Moreover, Safer restricts its clients such as Black from entering certain of its areas. On or about October 14, 2001, Carolyn White observed Black on Safer's fifth floor

near the President's office, which is a restricted area. (Def. L.R. 56.1 ¶ 29.) Black refused to leave and became irate and insulting and stated that he wanted to review Safer's policies. Safer staff escorted Black out of the restricted area. (*Id.*) Thereafter, Carolyn White requested that staff monitor Black when present in the building for employment services to ensure that he did not repeat the incident. (*Id.*)

Against Mason, Black seeks relief because he claims that she denied Black employment. (Def. L.R. 56.1 ¶ 30.) Mason, however, states that she had no involvement with Black or the matters complained of by him in this suit. (Def. L.R. 56.1 ¶ 31.)

## ANALYSIS

In Count I, Black claims that Safer violated the ADEA because it denied him employment for the case manager, intensive case manager and correctional counselor positions based on his age, 57. In Count II, Black alleges that Safer committed sex discrimination in violation of Title VII because it allegedly employed a female without prior work experience while denying Black employment due to his lack of work experience. Counts III and IV allege that Safer retaliated against Black by denying him certain employment services and by requiring that he be escorted while on Safer's premises because he complained about Safer's failure to hire him. Black's amendment to his complaint also alleges claims for disparate impact violations under Title VII and § 1981 and claims against Mason under § 1981.

Defendants contend that none of these claims can survive a motion for summary judgment because Black fails to establish a *prima facie* case of age discrimination, sex discrimination and discriminatory retaliation. Moreover, defendants argue that Black fails to meet the burden of proving that Safer's practice has an adverse impact upon African Americans.

6

Safer argues, in the alternative, that even if Black established a *prima facie* case of age discrimination, sex discrimination, or discriminatory retaliation, he cannot establish that Safer's legitimate, nondiscriminatory reasons for not hiring him are pretextual. Finally, in regard to Black's claims against Mason, defendants argue that she had no involvement in any of the decisions concerning Black and cannot be held liable under § 1981.[2]

A.  **ADEA (Count I)**

The ADEA prohibits employers from discriminating against an employee who is at least 40 years of age "with respect to his compensation, terms, conditions or privileges of employment, because of such individual's age . . . ."[3] 29 U.S.C. §§ 623 and 631. Black may establish age discrimination through either direct or indirect proof.[4] *Huff* v. *UARO, Inc.*, 122 F.3d 374, 380 (7th Cir. 1997). "Under the direct method, plaintiff must show either an acknowledgment of discriminatory intent by the defendant or its agents, or circumstantial evidence that provides the basis for an inference of intentional discrimination." *Id.*, citing *Troupe* v. *May Dep't Stores Co.*, 20 F.3d 734, 736 (7th Cir. 1994). The indirect method of proof

---

[2]As a preliminary matter, Black asks the court to consider his motion for estoppel, and asks that this court enter an order declaring that Safer is estopped from asserting the following positions: (1) that it has no record of receiving an employment application and resume from plaintiff; (2) that plaintiff's application and resume were considered and compared to two other applicants for employment in November and December 2001; and (3) that the three positions Black applied for became available in August 2001. In his motion Black presented absolutely no evidence or reasoning to support his claim. Only in his reply brief does Black clarify that his motion for estoppel is for "judicial estoppel." In any event, the court will simply deny the motion and view the facts in a light most favorable to Black, such that for purposes of this motion Safer had a record of receiving his employment application, did not compare it to two other applicants, and the positions did not become available in August 2001. These facts taken as true do not affect the resolution of this motion.

[3]The ADEA's purpose is "to promote employment of older persons based on their ability rather than age; to prohibit arbitrary age discrimination in employment; to help employers and workers find ways of meeting problems arising from the impact of age on employment." *Wade* v. *Lerner New York, Inc.*, 243 F.3d 319, 322 (7th Cir. 2001), quoting from 29 U.S.C. § 621(b).

[4]"A plaintiff seeking relief under the ADEA must establish that he would not have been treated adversely by his employer 'but for' the employer's motive to discriminate against him because of his age." *Wade*, 243 F.3d at 322.

is the familiar burden-shifting method set forth in *McDonnell Douglas Corp.* v. *Green*, 411 U.S. 792, 800-806 (1973).

In this case, Black has presented no direct proof of age discrimination. He must, therefore, use the *McDonnell Douglas* burden-shifting method to prove that Safer discriminated against him because of his age. Under the burden-shifting framework a plaintiff must first establish, by a preponderance of the evidence, a *prima facie* case of discrimination. *Robin* v. *Espo Eng'g Corp.*, 200 F.3d 1081, 1088 (7th Cir. 2000). If a plaintiff is able to meet his or her initial burden, then the burden shifts to the defendant to provide "evidence of a legitimate and nondiscriminatory reason for the employment decision." *Id.* If the defendant provides such a reason, then the plaintiff must prove, by a preponderance of the evidence, that the defendant's stated reason for the employment decision is merely a pretext for discrimination. *Wade*, 243 F.3d at 322.

For Black to establish a *prima facie* case of age discrimination, he must prove that (1) he was a member of the protected class of persons forty or older; (2) the employer was seeking applications for the position and he applied; (3) he was qualified for the position and was not hired; and (4) a younger person was hired. *Caldwell* v. *National Ass'n of Home Builders*, 771 F.2d 1051, 1056 n. 2 (7th Cir. 1985); *Kastel* v. *Winnetka Bd. of Educ.*, 946 F. Supp. 1329, 1334 (N.D. Ill. 1996). Black satisfies the first and second requirements of the *prima facie* case as he is over the required age of forty years old (Def. L.R. 56.1 ¶ 3), and Safer sought applications for the positions and he applied. (Def. L.R. 56.1 ¶ 9.) Black cannot otherwise establish a *prima facie* case of age discrimination. First, Black fails to meet the third condition. He was not qualified for the case manager position because it required one year of work experience as a counselor or

its equivalent. (Def. L.R. 56.1 ¶ 12.) He was also not qualified for the intensive case manager position because it required two years of prior work experience in human services working with high risk youths (ages 16-21) or its equivalent. (Def. L.R. 56.1 ¶ 15.) Moreover, he was not qualified for the Correctional Counselor position which required 3 years of security work experience and one year of supervisory experience, which Black did not have. (Def. L.R. 56.1 ¶ 18.)

Further, Black also fails to meet the fourth requirement of his *prima facie* case because Safer filled the case manager position with a sixty-one year old male who was older than Black. (Def. L.R. 56.1 ¶ 13.) Safer also filled the intensive case manager position with a forty-nine year old male who is insignificantly younger than Black. (Def. L.R. 56.1 ¶ 16). *See Scott v. Parkview Mem. Hosp.*, 175 F.3d 523, 525 (7th Cir. 1999) (concluding that the age differences of those who passed the interviews, 32-46, compared to those who failed, 42-48, were too slight to raise an inference of discrimination). Under these circumstances, it is not necessary to proceed passed the *prima facie* case. Safer is entitled to summary judgment on the Count I ADEA claim.

### B. Sex Discrimination (Count II)

Under Title VII, an employer cannot "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex." 42 U.S.C. § 2000e-2(a)(1). To prevail on a claim of sex discrimination, a plaintiff must show that the defendant intentionally discriminated against him or her. *Kormoczy v. Sec'y, U.S. Dep't of Hous. and Urban Dev.*, 53 F.3d 821, 824 (7th Cir. 1997). A plaintiff may offer evidence through either direct or indirect methods of proof. *Haugerud v. Amery Sch. Dist.*, 259 F.3d 678, 691 (7th Cir. 2001). "Under the direct method, plaintiff must show either an acknowledgment of

discriminatory intent by the defendant or its agents, or circumstantial evidence that provides the basis for an inference of intentional discrimination." *Huff*, 122 F.3d at 379, citing *Troupe*, 20 F.3d at 736. The indirect method of proof, once again, is the *McDonnell Douglas* burden-shifting method.

Black did not provide any evidence that Safer acknowledged a discriminatory intent or any circumstantial evidence that provides the basis for an inference of intentional discrimination, so he must rely on the indirect method of proof. A Title VII plaintiff must establish a *prima facie* case of sex discrimination by proving that (1) he is a member of a protected class; (2) he applied for, and was qualified for, a vacant position; (3) the employer rejected him for the position; and (4) the employer filled the position with an individual outside of the plaintiff's protected class, or the position remained available. *Gorence v. Eagle Foods Ctrs., Inc.*, 242 F.3d 759, 764-65 (7th Cir. 2001); *Mills v. Health Care Serv. Corp.*, 171 F.3d 450, 454 (7th Cir. 1999). Safer contends that Black cannot meet the second and fourth elements of his *prima facie* case because he has provided no evidence that he was qualified for the positions that he applied for and he provided no evidence that female applicants similarly qualified were hired instead of him. The court agrees. Black did not possess the requisite work experience for any of the positions available and Black cannot even identify the woman who he claims was treated more favorable than he. Black merely asserts that Safer supervisor Yvette Peeples informed him that a woman had been hired without experience and Safer provided her with on-the-job training because she had worked as an intern in the State's Attorney's office for six months. However, no employee meets such a profile. Indeed, the only one that is remotely close is Ryczek who had, in addition to four months of interning experience with United States Probation and Pretrial Services in Buffalo, three years

work experience as a Senior Counselor in Lockport, New York and two years work experience as a case manager in Chicago, Illinois. (Def. L.R. 56.1 ¶ 26.) Even if the court assumed that Ryczek is the woman Black refers to and that he has otherwise made out his *prima facie* case, Black presents no evidence to rebut Safer's nondiscriminatory reason for not hiring him, *i.e.*, that Ryczek was substantially more experienced than he. Accordingly, summary judgment is granted in favor of Safer on the Count II Title VII claim.

C.     **Disparate Impact (Count V)**

As distinguished from a disparate treatment analysis, "the necessary premise of a disparate impact claim is that some employment practices, adopted without a deliberately discriminatory motive, may in operation be functionally equivalent to intentional discrimination." *Watson v. Fort Worth Bank & Trust*, 487 U.S. 977, 987 (1988). Title VII employs a burden-shifting approach for disparate impact claims. *Bew v. City of Chicago*, 252 F.3d 891, 894 (7th Cir. 2001). Under Title VII, the plaintiff carries the burden of demonstrating a *prima facie* case of disparate impact by showing through significant statistical disparity that a facially neutral employment practice has a discriminatory impact on a protected class.[5] *Watson*, 487 U.S. at 993. The plaintiff's statistics should compare the racial composition of the pool of "qualified" applicants to the racial composition of, in this case, the employees of Safer. *See Gilty v. Village of Oak Park*, 919 F.2d 1247, 1254 (7th Cir. 1990). The burden then shifts to the employer to show that the employment practice bears a manifest relationship to the employment in question. *Watson*, 487 U.S. at 990. However, the plaintiff may still prevail by showing that defendant's

---

[5]Black also attempts to assert a disparate impact claim under § 1981. To prevail on such a claim Black would have to show that Safer engaged in intentional discrimination. *See Mozee v. American Commercial Marine Serv. Co.*, 940 F.2d 1036, 1051 (7th Cir. 1991). Black has presented no such evidence so this claim must fail.

11

business necessity claim is pretextual. *Connecticut* v. *Teal*, 457 U.S. 440, 447 (1982).

Black fails to demonstrate a *prima facie* case of disparate impact because his statistical analysis is deficient. Black argues that Safer's policy of not hiring ex-offenders until one year after their prison release date creates a disparate impact on non-white applicants because the prison population is composed of sixty-four percent non-whites. In disparate impact cases, it is the eligibility rate of qualified protected class members, not the general representation of protected class members in the population, that is telling. *See Gilty*, 919 F.2d at 1254. Black's statistical analysis falls short of showing a significant statistical disparity that Safer's facially neutral employment practice has a discriminatory impact on non-whites because his analysis did not compare the racial composition of the pool of "qualified" applicants to the racial composition of the employees at Safer. Even if one assumes that the statistics produced by Black crossed the "threshold of reliability" that would allow them to establish a *prima facie* case, Safer showed that its employment practice bears a manifest relationship to the employment in question because Safer felt there was need for ex-offenders to re-adjust to society for at least one year before they could effectively help other ex-offenders reintegrate into society. (Def. L.R. 56.1 ¶ 20-21.) Black presents no evidence to suggest that this reason is pretextual.

Finally, Black brings this suit as an individual, not on behalf of a class, and as such, the foregoing is irrelevant to him unless he can establish that he is a "qualified" non-white applicant. *See Gilty*, 919 F.2d at 1255 (finding that disparate impact relief was not available for an individual unless that individual proved that he or she was a qualified applicant). But as the court concluded earlier, Black is not "qualified" for purposes of his *prima facie* case under Title VII. If Black were to achieve individual relief, then he must establish that his individual

12

circumstances entitle him to that relief, and he cannot rely on the qualifications of those not present before this court to rescue him from the consequences of his own lack of qualifications. *See id.* For these reasons, the court will grant summary judgment in favor of Safer on the disparate impact claim under Title VII.

**D.     Retaliation (Counts III and IV)**

Title VII and the ADEA make it unlawful for an employer to discriminate against an employee for opposing a practice made unlawful under each Act. *See* 42 U.S.C. § 2000e-3(a); 29 U.S.C. §§ 215, 623(d). The retaliation analysis for sex and age discrimination cases are virtually identical. *Veprinsky v. Fluor Daniel, Inc.*, 87 F.3d 881, 884 (7th Cir. 1996). To prevail on a theory of retaliation, the plaintiff must demonstrate three elements: (1) that he opposed an unlawful employment practice; (2) that he suffered an adverse employment action; and (3) that the adverse employment action was caused by his opposition to the unlawful employment practice. *David v. Caterpillar, Inc.*, 324 F.3d 851, 858 (7th Cir. 2003); *Cullom v. Brown*, 209 F.3d 1035, 1040 (7th Cir. 2000).[6] Safer contends that Black's retaliation claim fails because (1) Safer was not his employer, (2) Black did not suffer an "adverse action," and (3) Black admitted in his deposition that Safer did not deny him employment services.

Black's retaliation claim is that Safer retaliated against him (imposed restrictions on his movement) because he complained to Peeples that Safer did not hire him for the positions (presumably because of age or sex). Safer's argument that it was not Black's employer is sound. Even though Safer was prohibited by 42 U.S.C. § 2000e-3(a) from discriminating against Black

---

[6]A plaintiff can establish an employer's intent to retaliate either directly or indirectly. *David*, 324 F.3d at 858.

13

as an applicant for employment, Black's retaliation claim is related to his presence at Safer in conjunction with his post-incarceration transition, not as an employee of Safer.

But even if it is assumed that an employment relationship existed, Black cannot establish a case of retaliation because he did not show that he suffered an adverse employment action. The Seventh Circuit has broadly defined an adverse employment action, but not everything that makes an employee unhappy is an actionable adverse action. *Stutler* v. *Ill. Dept. of Corr.*, 263 F.3d 698, 703 (7th Cir. 2001). To be actionable, the adverse employment action must be a materially adverse change in the terms and conditions of employment and must be more disruptive than a mere inconvenience or an alteration of job responsibilities. *Rabinovitz* v. *Pena*, 89 F.3d 482, 488 (7th Cir. 1996). A materially adverse change might be indicated by termination of employment, a demotion evidenced by a decrease in wage or salary, a material loss of benefits, or other indices that might be unique to a particular situation. *Id.*

Safer imposed a restriction on Black that did not amount to an adverse employment action. Safer restricts all of its clients from entering certain areas, and in October 2001 Black violated the restriction by coming near the President's office, a restricted area, and refusing to leave the area. (Def. L.R. 56.1 ¶ 29.) As a precaution, Safer required an escort for monitoring Black when he was present in the building so that he would not violate the restriction again. The restriction did not relate to Black's job responsibilities or job title, and the restriction is rationally related to the explanation given for its imposition. In sum, the restriction was not unreasonable in light of Safer's explanation; at most, this was a mere inconvenience that does not establish a case of retaliation. *See Rabinovitz*, 89 F.3d at 489 (holding that an employer pinpointing employee for various restrictions on his communication with others, entering and leaving and

14

limits on breaks were reasonable and mere inconveniences that did not amount to retaliation).
Therefore, summary judgment must be granted in favor of Safer on the retaliation claim.

E. **Mason's Individual Liability Under § 1981**

Pursuant to § 1981, individual liability may only be found where the individual herself "participated in the alleged discrimination against the plaintiff." *Behnia* v. *Shapiro*, 961 F. Supp. 1234, 1237 (N.D. Ill. 1997); *Daulo* v. *Commonwealth Edison*, 892 F. Supp. 1088, 1091 (N.D. Ill. 1995) ("Section 1981 liability against an individual demands personal involvement in discrimination."). To state a claim under § 1981 against Mason, Black must sufficiently allege that Mason possessed an "intent to discriminate on the basis of race." *Behnia*, 961 F. Supp. at 1237. Mason argues, and the court agrees, that Black does not provide sufficient evidence showing that Mason possessed an intent to discriminate against Black because Mason did not have any involvement with Black, his employment services, or the selection of the applicants who were hired for the positions he claimed to have applied for. (Def. L.R. 56.1 ¶ 31.) Accordingly, summary judgment is granted in favor of Mason.[7]

## CONCLUSION

For the reasons stated above, Safer and Mason's motion for summary judgment is granted [#18]. Black's motion for judicial estoppel is denied [#28]. This case is terminated.

Enter: *[signature]*
JOAN HUMPHREY LEFKOW
United States District Judge

Date: August 6th, 2003

---

[7]Mason also argues that she is not individually liable for Title VII or ADEA claims, however, plaintiff only alleges liability against Mason in his amendment to the complaint under 42 U.S.C. § 1981, so this is the only liability that the court will address.

15